[Cite as *Fettro v. Rombach Ctr., L.L.C.*, 2013-Ohio-2279.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| JAMES W. FETTRO, et al., | : | |
| Plaintiffs-Appellees, | : | CASE NO. CA2012-07-018 |
| | : | O P I N I O N |
| - vs - | | 6/3/2013 |
| | : | |
| ROMBACH CENTER, LLC, et al., | : | |
| Defendants-Appellants. | : | |

CIVIL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CVH 2011-0220

Smith & Quance, Peter D. Quance, 344 Jefferson Street, P.O. Box 210, Greenfield, Ohio 45123, for plaintiffs-appellees, James W. & Joyce Fettro, Heath & J. Steven Fettro

Finney, Stagnaro, Saba & Patterson Co., L.P.A., Paul T. Saba, Jeffrey M. Nye, 2623 Erie Avenue, Cincinnati, Ohio 45208, for defendants-appellants, Rombach Center, Only Downtown Pizza, and Papa John's

William E. Peelle, 149 East Main Street, Hillsboro, Ohio 45133, for defendant, Billy Kong

**RINGLAND, P.J.**

{¶ 1} Defendants-appellants, Rombach Center, LLC and Only Downtown Pizza doing business as Papa John's Pizza, appeal a decision of the Clinton County Court of Common Pleas granting summary judgment in favor of plaintiffs-appellees, James W. Fettro, Joyce Fettro, Heath H. Fettro, and J. Steven Fettro. For the reasons stated below, we affirm.

{¶ 2} Appellants and appellees own adjacent properties located in Wilmington, Ohio. The properties make up a shopping center and are divided into three parcels, parcels B, C, and D. Parcel B contains a large building that was once used as a grocery store but is now vacant. Parcel B is owned by appellees. Appellants own parcels C and D, which consists of a pharmacy and other small stores.

{¶ 3} These properties are governed by an agreement entered into by appellants' and appellees' predecessors-in-interest. This agreement provides that the landowners of the parcels would develop, maintain, and improve the property as a retail shopping center. The owners of parcel B agreed to develop their property as a supermarket. In return, the owners of parcels C and D agreed to develop their property to include a retail drug store and other retail shops. The agreement also contains a restrictive covenant which lists uses that the owners are not permitted to allow to operate on the parcels. The prohibited uses include a movie theater, a bowling alley, and any non-retail businesses except those business services consistent with community standards. The parties' predecessors-in-interest also applied to register the parcels as a "Planned Development District" (PD) for the City of Wilmington. The zoning application was approved, and the parcels were registered as a PD-2 zone.

{¶ 4} On March 30, 2011, appellees filed a declaratory judgment action. Appellees wished to sell parcel B to a church and sought an order that the operation of a church would not violate the agreement. Appellants objected and argued that the agreement and Wilmington Zoning Ordinances prohibited the operation of a church on parcel B. Subsequently, appellants and appellees each moved for summary judgment. The trial court granted summary judgment to appellees, finding that the operation of a church on parcel B was not prohibited by the agreement between the parties or Wilmington's Zoning Ordinances.

{¶ 5} Appellants filed this appeal, asserting three assignments of error.

{¶ 6} Assignment of Error No. 1:

- 2 -

{¶ 7} THE TRIAL COURT IMPROPERLY CONSTRUED, INTERPRETED, OR APPLIED THE AGREEMENT.

{¶ 8} Appellants argue the trial court erred in its interpretation of the agreement between the parties. Appellants assert the court erred when it applied a presumption against restrictive covenants and it strictly construed the covenant against the restriction. Instead, appellants argue the trial court should have looked to the agreement as a whole and looking at the whole agreement, it clearly shows a church is prohibited from operating on the property.

{¶ 9} This court's review of a trial court's ruling on a summary judgment motion is de novo, which means we review the judgment independently and without deference to the trial court's determination. *Simmons v. Yingling*, 12th Dist. No. CA2010-11-117, 2011-Ohio-4041, ¶ 18. We utilize the same standard in our review that the trial court uses in its evaluation of the motion. *Id.*

{¶ 10} Summary judgment is appropriate when there are no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Williams v. McFarland Properties*, *L.L.C.*, 177 Ohio App.3d 490, 2008-Ohio-3594 (12th Dist.), ¶ 7. To prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials that show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The nonmoving party must then present evidence that some issue of material fact remains to be resolved; it may not rest on the mere allegations or denials in its pleadings. *Id.* All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. *Morris v. First Natl. Bank & Trust Co.*, 21 Ohio St.2d 25, 28 (1970).

**{¶ 11}** Restrictive covenants are covenants running with the land, intended to limit the grantee's use of the land to specified purposes, with the object of protecting the interests of all landowners in the same allotment or community. *Maasen v. Zopff*, 12th Dist. Nos. CA98-10-135, CA98-10-138, CA98-12-153 (July 26, 1999). Ohio's legal system does not favor restrictions on the use of property. *Driscoll v. Austintown Assoc.*, 42 Ohio St.2d 263, 277 (1975). However, restrictive covenants containing a general building scheme or plan for development are enforceable if the covenants are not contrary to public policy. *Connolly Constr. Co. v. Yoder*, 3d Dist. No. 14-04-39, 2005-Ohio-4624, citing *Dixon v. Van Sweringen Co.*, 121 Ohio St. 56 (1929), paragraph one of the syllabus. This court has stated that one of the requirements for creation of an enforceable restriction on the use of land by covenant is, "the restriction cannot be implied, but must be express." *Dillingham v. Do*, 12th Dist. Nos. CA2002-01-004, CA2002-01-017, 2002-Ohio-3349, ¶ 12.

**{¶ 12}** Restrictive covenants in deeds are generally interpreted by those rules used to interpret contracts. *Dillingham* at ¶ 18. As the Supreme Court has stated:

> the general rule, with respect to construing agreements restricting the use of real estate, is that such agreements are strictly construed against limitations upon such use, and that all doubts should be resolved against a possible construction thereof which would increase the restriction upon the use of such real estate.

*Driscoll* at 277, citing *Loblaw, Inc. v. Warren Plaza, Inc.*, 163 Ohio St. 581 (1955). Furthermore, "[i]f the covenant's language is indefinite, doubtful, and capable of contradictory interpretations, the court must construe the covenant in favor of the free use of land." *Cumberland Trail Homeowners Assn., Inc. v. Bush*, 5th Dist. No. 11 CA 40, 2011-Ohio-6041, ¶ 13, citing *Houk v. Ross*, 34 Ohio St.2d 77 (1973), paragraph two of the syllabus.

**{¶ 13}** In the present case, the agreement between the parties set forth the general plan for the "acquisition and development, maintenance, and improvement of the said Parcel

- 4 -

B, Parcel C, and Parcel D as a retail shopping center including a supermarket and small retail stores." The agreement refers to the parcels generally as "the shopping center." The agreement goes on to state that parcel B will be developed as a supermarket and parcel C will include a "retail drug store" as well as other "retail shops." The agreement also provides a number of mutual easements for ingress, egress, parking and utilities.

{¶ 14} Paragraph 3.02 in the agreement provides that appellees' predecessor in interest "will develop its Parcel B with a supermarket." Paragraph 3.03 goes on to state that in no event shall the parties operate or permit any other person to operate on parcel B, C, or D any of the following businesses or services:

(1) Move theater or cinema

(2) State or local unemployment office

(3) Night club

(4) Bingo parlor or bowling alley

(5) Any non-retail business except those business services consistent with community standards

(6) Any retail business selling used merchandise except rent to own furniture and appliance stores

(7) Any lounge, restaurant, or games parlor located within 180 feet of Parcel B, Parcel C, or Parcel D.

{¶ 15} We begin by noting that we disagree with appellants' argument that the trial court incorrectly stated the law regarding restrictive covenants. The trial court merely restated the Ohio Supreme Court's most recent proclamation regarding interpreting restrictive covenants. Additionally, the trial court did not apply "a presumption against enforcement of the Agreement's restrictive covenant" but instead, looked to the language of the agreement to see whether churches were prohibited from operating on parcel B.

{¶ 16} We find that the trial court did not err in finding that the agreement did not

prohibit a church from operating on parcel B. It is clear that the use restrictions contained in paragraph 3.03 did not mention churches as a prohibited use. Specifically, item five under paragraph 3.03 prohibited "any non-retail business except those * * * consistent with community standards." A church does not qualify under this restriction as a church is not a "business." Business is defined as "[a] commercial enterprise carried on for profit." *Black's Law Dictionary* (9th ed. 2009). On the other hand, a church is defined as a "building set apart for public, * * * Christian worship," or "a body of worshipers: a religious society or organization." *Webster's Third New International Dictionary* 404 (1993). Further, even if a church is a business, we find that a church is "consistent with community standards." Therefore, paragraph 3.03 does not prohibit a church from operating on parcel B.

{¶ 17} Additionally, there are no other provisions in the agreement which expressly prohibits churches. Appellants argue that the language in the agreement referring to the parcels as the "shopping center," "retail shops," and the statement that parcel B is to be developed as a supermarket shows that the parties intended for the property to be restricted to retail stores. However, to be enforceable, a covenant must expressly prohibit the restricted use. The general language in the agreement that refers to the property as a "shopping center" is insufficient to prohibit a church. While referring to the property as a shopping center might show that the parties intended the property to be used for retail, this is not enough to prohibit all uses that are inconsistent with retail stores such as a church. This court is without the power to rewrite contracts. If the parties wished to restrict churches from operating on parcel B, they should have expressly stated this in unambiguous language.

{¶ 18} Appellants' first assignment of error is overruled.

{¶ 19} Assignment of Error No. 2:

{¶ 20} THE TRIAL COURT IMPROPERLY APPLIED AND INTERPRETED THE ZONING REGULATIONS FOR THE PROPERTY.

{¶ 21} Appellants argue the court erred when it found that the Wilmington zoning ordinances permitted a church to operate at parcel B. Specifically, appellants argue that a church is not permitted to operate within Wilmington's PD-2 zone because a church is not consistent with the "development plan" between the parties. Additionally, appellants argue the court erred when it took judicial notice of facts without giving appellants the opportunity to be heard.

Zoning

{¶ 22} Part Eleven of the Wilmington Codified Ordinances establishes the city of Wilmington's Zoning Ordinances. Chapter 1159 governs "Planned Development Districts" (PD). In this case, the property is zoned as a PD-2 district. Uses that are permitted in a PD-2 district include "contingent uses and conditional uses in the B-1 Zoning District." Section 1159.07(a)(1). Additionally, in a PD-2 district "all such uses [must be] developed in a unified manner in accordance with the approved development plan." *Id.* Therefore, in order for a church to be permitted under Wilmington's Zoning Ordinances, a church must be, 1) a "contingent" or "conditional" use in a B-1 Zoning District and, 2) in accordance with the approved development plan.

{¶ 23} Initially, we find that a church is a "contingent use" in a B-1 zoning district. Contingent uses for a B-1 zoning district are listed in Section 1155.022. The section lists a number of various uses for business, including use as a "church or temple." Further, Section 1161.05 contains a chart which shows that churches are permitted in all districts, except industrial districts. Thus, it is clear that churches are permitted in B-1 districts. Consequently, churches are likewise permitted in PD-2 districts.

{¶ 24} Our inquiry now turns to whether the operation of a church in parcel B meets the second requirement, a "use developed in a unified manner in accordance with the approved development plan." Section 1159.03 outlines the process that a landowner must

follow if he wishes to place land in a PD district. A landowner who wishes to have his property zoned as a PD district, must submit an application that includes a "development plan." Section 1159.03(a). The development plan must include features such as the location and floor area of the proposed structures, location and size of streets, and the general landscape plan. Section 1159.03(b)(2), (c)(2).

{¶ 25} In this case, in 1985 the property owners of parcels B, C, and D applied to have the property zoned as PD-2. Within this 1985 application, the property owners submitted the required development plan. This plan included an architectural drawing of the property and the proposed buildings. The plan also lists the specifications of the buildings, parking spaces, sidewalks, and roadways on the property. After a careful review of the development plan, we find that a church is not prohibited from operating on parcel B.

{¶ 26} Appellants argue that the development plan shows that a church is not permitted to operate on parcel B as the drawing titles the plan the "Shopping Center." Appellants assert that although the provisions of PD-2 would theoretically permit a church to operate in this zone, the "Shopping Center" designation in the development plan limits the permissible businesses for zoning purposes to retail shops. Thus, because a church is not a retail business, it does not fit under "Shopping Center," and it violates the Wilmington Zoning Ordinances. We find that the development plan does not prohibit the operation of a church. While the drawing is titled "Shopping center," this language by itself is insufficient to prohibit all uses except retail shops.

{¶ 27} Based on the foregoing, a church is not prevented from operating on parcel B under the Wilmington Zoning Ordinances. As noted above, a church is expressly allowed to operate in a B-1 zoning district and a church fell within the approved development plan. Therefore, the trial court did not err in finding that an operation of a church is not prohibited by the Wilmington Zoning Ordinances.

Judicial Notice

{¶ 28} Appellants' second argument is that the trial court erred when it took judicial notice of certain facts in its decision as to whether the zoning ordinances would be violated.

{¶ 29} Judicial notice is governed by Evid.R. 201. "A court may take judicial notice, whether requested or not." Evid.R. 201(C). Further, "[j]udicial notice may be taken at any stage of the proceedings. *Id.* at (F). Once judicial notice of a fact is taken, a "party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken." *Id.* at (E).

{¶ 30} If a trial court takes judicial notice of a fact without prior notification of the parties, it is the adversely affected party's obligation to object and request a hearing. *Ohio St. Assn. of United Assn. of Journeymen and Apprentices v. Johnson Controls, Inc.*, 123 Ohio App.3d 190, 196 (8th Dist.1997). If a party fails to timely request an opportunity to be heard regarding judicial notice, the party waives or forfeits any challenges to the judicially-noticed facts. *Brackett v. Moler Raceway Park, L.L.C.*, 12th Dist. No. CA2012-06-009, 2013-Ohio-1102, ¶ 58. In this case, appellants failed to request an opportunity to be heard on the propriety of taking judicial notice. Consequently, appellants waived any challenge to the judicially noticed facts.

{¶ 31} Appellants' second assignment of error is overruled.

{¶ 32} Assignment of Error No. 3:

{¶ 33} THE TRIAL COURT VIOLATED THE DOCTRINE OF CONSTITUTIONAL AVOIDANCE BY RAISING A CONSTITUTIONAL ISSUE SUA SPONTE.

{¶ 34} Appellants argue that the trial court violated the doctrine of constitutional avoidance by sua sponte raising the issue of whether a restrictive covenant or a city's zoning

ordinances that would prohibit the operation of a church would be unconstitutional or contrary to public policy.

{¶ 35} The Ohio Supreme Court has stated that the duty of a reviewing court is to decide actual controversies by a judgment that can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law that cannot affect the matter in issue in the case. *Nead v. Brown Cty. Gen. Hosp.*, 12th Dist. No. CA2005-09-018, 2007-Ohio-2443, ¶ 111, citing *Miner v. Witt*, 82 Ohio St. 237 (1910). This court has found that neither the agreement nor the Wilmington Zoning Ordinances prohibit a church from operating on parcel B. Therefore, we do not need to address whether a court's enforcement of a restrictive deed covenant or municipal ordinances that would prohibit the operation of a church on a piece of land would violate the United States Constitution or the Ohio Constitution. *See* App.R. 12(A)(1)(c).

{¶ 36} Additionally, we note that the trial court never stated that the court's enforcement of the agreement or the Zoning Ordinances *would* violate either the United States or Ohio Constitutions. Instead, the trial court expressed its concern that *if* it were to interpret the agreement or the zoning ordinances as prohibiting the operation of a church on parcel B, this interpretation *could* be unconstitutional. The trial court went on to state, "the Court makes no definitive findings on these questions." Thus, there is no issue for this court to rule upon because the trial court made no findings as to whether the enforcement of the agreement or the Zoning Ordinances would be unconstitutional.

{¶ 37} Appellants' third assignment of error is overruled.

{¶ 38} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.