[Cite as *Pollard v. Elber*, 2018-Ohio-4538.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

Shirley Gilliam Elber Pollard

Appellant

v.

Bonnie Ellen Elber, Executrix of the Estate
of the Decedent Othmar Elber

Appellee

Court of Appeals No. E-17-050

Trial Court No. 2016 CV 0345

**DECISION AND JUDGMENT**

Decided:  November 9, 2018

* * * * *

Warren W. Ruggles and West M. Ruggles, for appellant.

Michael B. Jackson, for appellee.

* * * * *

**MAYLE, P.J.**

**{¶ 1}** Appellant, Shirley Pollard, appeals the August 4, 2017 judgment of the Erie

County Court of Common Pleas granting summary judgment to appellee, Bonnie Elber

("Elber"), the executor of the estate of John Othmar Elber ("Othmar"), and dismissing

Pollard's complaint.  For the following reasons, we affirm, in part, and reverse, in part.

## I. Background and Facts

{¶ 2} Othmar died in August 2015. In February 2016, Pollard presented a claim to Othmar's estate for $167,045.39 plus interest for unpaid child support, $40,000 for improper disposition of Othmar's real estate, and $120,000 for fraud related to the transfer of the real estate. The estate rejected the claim in full.

{¶ 3} Pollard then filed a complaint in the trial court alleging that Othmar's estate owed her money based on child support that Othmar failed to pay while he was alive ("the civil litigation"). Attached to the complaint were two judgment entries from the Erie County Court of Common Pleas, Domestic Relations Division, that were issued in Pollard and Othmar's divorce case ("the divorce litigation"). The first, issued on October 4, 1974, ordered Othmar to pay child support in the amount of $70 per week, plus poundage. Of the support amount, $20 per week was to be applied to Othmar's arrearages. The second judgment entry, issued on June 24, 1975, noted that Othmar was $8,288.06 in arrears on his child support obligation. In her responses to requests for production of documents, Pollard stated that she had not received any child support payments "[f]rom the date of the child support order per the pleadings to the present * * *."

{¶ 4} Elber filed a motion for summary judgment based on laches, speculative damages, and waiver. She also sought summary judgment on the issue of prejudgment interest. In support of her motion, Elber submitted: (1) two judgment entries and the docket sheet (which appears to be incomplete) from the divorce litigation; (2) two letters

2.

from Pollard to Othmar and one letter from Othmar to one of Pollard and Othmar's children; and (3) Pollard's responses to Elber's requests for production of documents and interrogatories. Other than the discovery responses, none of the documents are certified or incorporated into an affidavit.

{¶ 5} In her memorandum in opposition, Pollard argued that Elber's claim of laches was not supported by the facts of the case; Pollard could, in fact, determine her damages; Elber's waiver argument misconstrues the law; and Pollard was entitled under the common law to prejudgment interest. In support of her arguments, Pollard attached as exhibits: (1) portions of Elber's responses to requests for production of documents; (2) three judgment entries from the divorce litigation that were not certified or incorporated into an affidavit; and (3) a certified copy of a balance sheet from 1978 showing that the predecessor of the Erie County Child Support Enforcement Agency did not collect any child support payments from Othmar or disburse any child support payments to Pollard. Pollard also asked the court to strike the letters attached to Elber's motion because they were irrelevant and unauthenticated.

{¶ 6} In her reply, Elber reiterated the arguments from her motion and asked the court to take judicial notice of the records in the divorce litigation. She also attached as exhibits five additional judgment entries from the divorce litigation that were neither certified nor incorporated into an affidavit.

3.

**{¶ 7}** In response to Elber's request for the trial court to take judicial notice of the divorce litigation, Pollard filed a motion to consolidate the civil litigation with the divorce litigation and objected to the court taking judicial notice of the divorce litigation file.

**{¶ 8}** On August 4, 2017, the trial court issued its judgment entry granting summary judgment in Elber's favor and dismissing Pollard's case. After taking judicial notice of "the filings contained in the divorce proceedings as well as the Court's docket reflecting same," the court found that Pollard's complaint was barred by laches. The court determined that Pollard waited at least 29 years before asserting her known right to collect unpaid child support. It also concluded that Pollard had no excuse for the delay because she was aware of Othmar's whereabouts, maintained contact with him, and knew of some of his assets, but did not attempt to secure a judgment for child support while he was alive. The court found unpersuasive Pollard's argument that the delay was excusable because she believed, based on her prior, unsuccessful motions to show cause, that further attempts to collect the child support would have been futile. The court discounted Pollard's excuse because "a previous show cause action by Plaintiff resulted in some funds being collected and released to Plaintiff." Finally, the court determined that Elber was prejudiced by Pollard's delay because Pollard did not provide an affidavit attesting to her claimed damages and was "clearly relying only on the Court's file" to support her claims even though "there are some entries in the Court's file which are not reflected anywhere in the docket." The court concluded that this made it "simply impossible for the Defendant's estate to attempt to generate a defense * * *."

4.

{¶ 9} Despite dismissing Pollard's complaint, the court went on to analyze her claim for prejudgment interest. The court found that the statute providing for prejudgment interest on unpaid child support was enacted in July 1992 and could not be applied retroactively. It also determined that the only way interest could be collected on unpaid child support accruing prior to July 1992 was if the amount had been reduced to a judgment, which Pollard had not done in this case. Finally, the court "found no authority to support the Plaintiff's position that interest can be awarded under a theory of common law."

{¶ 10} Pollard now appeals the trial court's decision, raising five assignments of error.

First Assignment of Error[:] The trial court erred in basing its summary judgment ruling upon documents that were non-evidentiary, i.e. they were either not supported by an affidavit or were not certified and were therefore inadmissible as a matter of law.

Second Assignment of Error[:] The trial court erred by citing statements of counsel as "facts" when there is no evidence in the record to support them.

Third Assignment of Error[:] The trial court erred by taking judicial notice of a file in a different case without having the file properly before it, as it had no jurisdiction to do so.

Fourth Assignment of Error[:] The trial court erred by improperly weighing the evidence, on every occasion finding against appellant, and

resolving the questions concerning the evidence in favor of appellee, the moving party.

Fifth Assignment of Error[:]  The trial court erred by refusing to consider the question of prejudgment interest at common law, which is occasioned by the loss which a parent sustains by being deprived of child support, and on account of the gain made from its use by the other parent.

## II.  Law and Analysis

### A.  Elber's Evidence does not Support Summary Judgment

{¶ 11} In her first three assignments of error, Pollard argues that the trial court based its summary judgment decision on improper evidence.  Specifically, she contends that the documents Elber submitted with her motion for summary judgment were not proper under Civ.R. 56(C), the trial court adopted unsupported statements from Elber's counsel as facts, and the trial court improperly took judicial notice of the file from the divorce litigation.  Elber responds that the information in the divorce litigation was before the court in the civil litigation because Pollard reopened the divorce case and joined the estate as a party, making the trial court aware of the information from the divorce litigation.  Assuming that the information from the divorce litigation was not properly before the trial court after Pollard reopened the divorce case, Elber contends that the court properly took judicial notice of the divorce litigation file.  Finally, Elber argues that Pollard waived the issue of judicial notice on appeal by not requesting a hearing under Evid.R. 201(E).  We address each issue in turn.

6.

**1. The Trial Court Improperly Took Judicial Notice of the Divorce Litigation**

{¶ 12} We will first address Pollard's third assignment of error. In it, she contends that the trial court erred by taking judicial notice of the file in the divorce litigation because a court cannot take judicial notice of determinations made in a separate case unless the file in the separate case is before the court. Elber responds that the trial court did not have to take judicial notice of the divorce litigation because the case was already reopened, which put the divorce litigation before the court. Alternatively, Elber contends that the trial court properly took judicial notice of the divorce litigation docket, which was sufficient to justify granting summary judgment. Elber also argues that Pollard waived any objection to the trial court taking judicial notice of the divorce litigation file by failing to request a hearing under Evid.R. 201(E).

{¶ 13} Under Evid.R. 201, a court may take judicial notice of adjudicative facts ("i.e., the facts of the case") when the facts are not subject to reasonable dispute and are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Evid.R. 201(A), (B).

{¶ 14} "Judicial notice allows a court to accept, 'for purpose of convenience and without requiring a [party's] proof, * * * a well-known and indisputable fact.'" *In re C.Y.*, 6th Dist. Lucas No. L-13-1184, 2014-Ohio-1144, ¶ 16, quoting *State v. Blaine*, 4th Dist. Highland No. 03CA9, 2004-Ohio-1241, ¶ 12. A court may take judicial notice of prior proceedings in the case under consideration, but *only* of those proceedings. *State v. Treen*, 6th Dist. Ottawa No. OT-99-060, 2000 Ohio App. LEXIS 2083, 6 (May 19, 2000).

7.

That is, "[a] court is not permitted to take judicial notice of proceedings in another case, * * * even *a prior proceeding before the same court involving the same parties*." (Emphasis added.) *McMahon v. Continental Express, Inc.*, 6th Dist. Wood No. WD-07-030, 2008-Ohio-76, ¶ 34; *Dombelek v. Admr., Bur. of Workers' Comp.*, 154 Ohio App.3d 338, 2003-Ohio-5151, 797 N.E.2d 144, ¶ 26 (7th Dist.) ("a trial court may not even take judicial notice of its own judgment entries in another case."). This rule is designed to facilitate proper appellate review; if the trial court takes judicial notice of prior proceedings, the appellate court cannot review the propriety of the trial court's reliance on information that is not in the record. *C.Y.* at ¶ 16.

{¶ 15} Regardless, "[i]t is axiomatic that a trial court may take judicial notice of its own docket"—including the docket in a separate case. *Indus. Risk Insurers v. Lorenz Equip. Co.*, 69 Ohio St.3d 576, 580, 635 N.E.2d 14 (1994). The trial court cannot take judicial notice of a docket "for the truth of the matters asserted in the other litigation," however, but only "to establish the fact of such litigation." *State ex rel. Coles v. Granville*, 116 Ohio St.3d 231, 2007-Ohio-6057, 877 N.E.2d 968, ¶ 20, quoting *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir.1992), and *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.1991).

{¶ 16} Here, the trial court improperly took judicial notice of information from the divorce litigation. Although the civil litigation involves the same parties and Pollard's claims arise from the child support orders issued in the divorce litigation, this is a separate action. Because this is a separate action, the trial court was only permitted to take notice of the docket from the divorce litigation, and then only to the extent that the

8.

court used the docket "to establish the fact of" the divorce litigation. *Coles* at ¶ 20; *Indus. Risk* at 580; *McMahon* at ¶ 34. Instead, the trial court relied on information contained in the docket sheet to prove "the truth of the matters asserted in the other litigation." *Coles* at ¶ 20. For example, the trial court used the docket to establish the amount of Othmar's child support obligation, when the obligation was modified, that Othmar had amassed arrearages, and that Pollard did not attempt to collect unpaid child support from Othmar after January 1975. None of this information is the type that can be established by judicial notice of a case docket.

{¶ 17} Elber argues that the divorce litigation was before the trial court—and thus did not require judicial notice to be considered by the court—because Pollard reopened the divorce case. She relies on the fact that both the civil litigation and the divorce litigation were "before the same court and the same Judge with the same parties utilizing the same underlying facts to address the exact same issue." A judge's personal knowledge of an issue is not sufficient to allow the court to consider a fact as evidence. *See Staffrey v. Smith*, 7th Dist. Mahoning No. 09-MA-107, 2010-Ohio-1296, ¶ 38 (a judge cannot notice a fact based on personal knowledge). Further, Elber's argument is directly contrary to the rule that courts cannot take judicial notice of prior proceedings, unless the prior proceedings happened earlier in the same case, even if the court, judge, parties, facts, and issues are identical to those in the separate case. *McMahon* at ¶ 34; *Dombelek* at ¶ 26. Moreover, the only information from the divorce litigation that is in the civil litigation record are the uncertified, unauthenticated docket sheet and judgment entries that the parties submitted as exhibits. Without having the record from the divorce

9.

litigation, we are unable to review all of the information that the trial court might have considered in reaching its decision on summary judgment.

{¶ 18} We also disagree with Elber's contention that Pollard waived the issue of judicial notice. Under Evid.R. 201(E), "A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed." If a party fails to request an opportunity to be heard, the party waives or forfeits the issue on appeal. *State ex rel. Cty. of Cuyahoga v. Jones Lang Lasalle Great Lakes Co.*, 8th Dist. Cuyahoga No. 104157, 2017-Ohio-7727, ¶ 108, citing *Fettro v. Rombach Ctr., LLC*, 12th Dist. Clinton No. CA2012-07-018, 2013-Ohio-2279, ¶ 30. Filing written objections to judicial notice is sufficient to preserve the issue for appeal. *See State v. Cleavenger*, 7th Dist. Belmont No. 17 BE 0003, 2018-Ohio-446, ¶ 32 ("[W]hen a court takes judicial notice, it is incumbent on a party (who wants to later oppose its taking of judicial notice) to challenge the judicial notice-taken [sic] by objecting * * *. Without such an objection and/or request to be heard on the propriety of taking judicial notice, the matter is waived."); *see also State ex rel. Bell v. Pfeiffer*, 131 Ohio St.3d 114, 2012-Ohio-54, 961 N.E.2d 181, ¶ 15 (party was given an opportunity to be heard by filing written objections to a magistrate's decision; no oral hearing was necessary); *Davenport v. Big Bros. & Big Sisters of the Greater Miami Valley, Inc.*, 2d Dist. Montgomery No. 23659, 2010-Ohio-2503, ¶ 26 (party seeking judicial notice properly heard on the briefs).

{¶ 19} Here, although Pollard did not specifically request a hearing on the issue of judicial notice, she filed written objections on July 10, 2017, on the basis that a court

10.

cannot notice the contents of the file in separate litigation without having the file properly before it .[1]  We find that this sufficiently preserved the issue for our review, and, thus, Elber's argument that Pollard waived the issue is without merit.  Accordingly, we find that Pollard's third assignment of error is well-taken.

## 2. The Trial Court Relied on Improper Evidence

{¶ 20} In her first and second assignments of error, Pollard argues that the trial court used improper evidence to support its decision on summary judgment.  We agree.

{¶ 21} Under Civ.R. 56(C), summary judgment may be granted only if "it appears from *the evidence* or stipulation, and only from *the evidence* or stipulation, that reasonable minds can come to but one conclusion * * *."  (Emphasis added.)  To support a motion for summary judgment, "[t]he moving party must point to some evidence in the record of the type listed in Civ.R. 56(C)."  *U.S. Bank Natl. Assn. v. Downs*, 6th Dist. Erie No. E-15-062, 2016-Ohio-5360, ¶ 15, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).  The evidence must be in the form of "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact * * *."  Civ.R. 56(C).  A court may not consider any other types of evidence.  *Id.*

---

[1] The trial court never ruled on Pollard's objections, but implicitly overruled them when it took judicial notice of the divorce litigation in its August 4, 2017 decision.  *See State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 223, 631 N.E.2d 150 (1994) ("[W]hen a trial court fails to rule upon a pretrial motion, it may be presumed that the court overruled it.").

11.

**{¶ 22}** Any evidence that is not specifically listed in Civ.R. 56(C) is only proper if it is incorporated into an appropriate affidavit under Civ.R. 56(E). *Bank of Am., N.A. v. Duran*, 6th Dist. Lucas No. L-14-1031, 2015-Ohio-630, ¶ 45; *J&G Indus. v. Abood*, 6th Dist. Lucas No. L-02-1062, 2002-Ohio-5912, ¶ 18, fn. 2. Documents that "'are not sworn, certified, or authenticated by affidavit have no evidentiary value and may not be considered by the court in deciding whether a genuine issue of material fact remains for trial.'" *Battaglia v. Conrail*, 6th Dist. Lucas No. L-08-1332, 2009-Ohio-5505, ¶ 42, quoting *Green v. B.F. Goodrich Co.*, 85 Ohio App.3d 223, 228, 619 N.E.2d 497 (9th Dist.1993). Although a court retains the discretion to consider evidence that is not specified in Civ.R. 56(C), it may only exercise that discretion if the opposing party does not object to the improper evidence. *See State ex rel. Gilmour Realty, Inc. v. City of Mayfield Heights*, 122 Ohio St.3d 260, 2009-Ohio-2871, 910 N.E.2d 455, ¶ 17 ("Although appellees did not support these pertinent facts with evidence of the kinds specified in Civ.R. 56(C), courts may consider other evidence if there is no objection on this basis.").

**{¶ 23}** In this case, the majority of the evidence that Elber submitted with her motion for summary judgment was not of the types allowed by Civ.R. 56(C). She relied on copies of judgment entries and the docket sheet from the divorce litigation, letters written by Pollard and Othmar, Pollard's responses to requests for production of documents, and Pollard's answers to interrogatories. Of these, only the answers to

12.

interrogatories are proper under Civ.R. 56(C).[2] Elber did not submit any affidavits that incorporated the remaining evidentiary materials. Thus, the only information that the trial court could have properly considered was the answers to interrogatories.

{¶ 24} Despite that, the trial court's judgment entry includes facts that were gleaned either from taking judicial notice of the divorce litigation, the exhibits attached to Elber's motion and reply, or counsel's arguments in the motion and reply. To the extent that the trial court relied on anything other than Pollard's answers to interrogatories, the trial court erred. Accordingly, we find that Pollard's first and second assignments of error are well-taken.

### 3. The Evidence in this Case does not Support Summary Judgment

{¶ 25} Pollard argues under her first three assignments of error that the trial court's decision must be reversed because it was based on improper evidence. We agree.

{¶ 26} An appellate court reviews summary judgment de novo, employing the same standard as the trial court. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). The court can grant a motion for summary judgment only when the moving party demonstrates:

---

[2] Responses to requests for production of documents are not "evidence" under Civ.R. 56(C). *Sweet v. D'Poo's*, 8th Dist. Cuyahoga No. 65873, 1994 Ohio App. LEXIS 345, 5 (Feb. 3, 1994); *IBEW Local Union No. 317 v. Southeastern Elec. Constr.*, 4th Dist. Gallia No. 85 CA 12, 1986 Ohio App. LEXIS 9948, 9-11 (Dec. 30, 1986); *but see Parrot v. A.R.E., Inc.*, 5th Dist. Stark No. 2006CA00005, 2006-Ohio-4527, ¶ 37 ("[W]e find that the subject medical records were provided in response to requests for production during discovery, and therefore such documents were permissible under Civ.R. 56(C) * * *.").

13.

(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); Civ.R. 56(C).

{¶ 27} The party seeking summary judgment must specifically delineate the basis upon which the motion is brought and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996); *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). The opposing party must do so using "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact * * *." Civ.R. 56(C). A "material" fact is one that would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 827, 675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

{¶ 28} Keeping in mind that the only items of evidence that are proper under Civ.R. 56 are "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact," the extent of the evidence that we can properly consider is: (1) Pollard's allegation in her complaint that Othmar did not pay his child support obligation; (2) Pollard's allegation that Othmar did not make any child support payments after the trial court issued an order on June 24, 1975; (3) Pollard's allegation that, according to the trial court's June 24, 1975 order, Othmar's arrearages were $8,288.06; and (4) Pollard's statements in her answers to interrogatories that she did not recall Othmar making any support payments from the time of their divorce until the present, although she conceded that the divorce file might contain some records of payments.

{¶ 29} In her motion for summary judgment, Elber argued that Pollard's claims against Othmar's estate were barred by laches and waiver and that Pollard's damages were speculative. After considering each argument in light of the proper evidence, we find that the trial court erred in granting summary judgment to Elber.

### i. Laches

{¶ 30} First, we find that genuine issues of material fact remain on the issue of laches. Laches is a party's failure to assert a right for an unreasonable and unexplained period of time under circumstances that cause prejudice to the opposing party. *Connin v. Bailey*, 15 Ohio St.3d 34, 35, 472 N.E.2d 328 (1984). Delay alone is an insufficient basis to support a laches defense, however; the party asserting the defense must also show that she was materially prejudiced by the opposing party's delay. *Smith v. Smith*, 168 Ohio 15.

St. 447, 156 N.E.2d 113 (1959), paragraph three of the syllabus.  Material prejudice

exists when the defendant shows (1) the loss of evidence helpful to the defendant's case

or (2) a change in the defendant's position that would not have occurred if the plaintiff

had asserted her rights sooner.  *Junkins v. Spinnaker Bay Condo. Assn.*, 6th Dist. Ottawa

Nos. OT-01-006 and OT-01-007, 2002 Ohio App. LEXIS 827, 32-33 (Mar. 1, 2002).

{¶ 31} Laches is an affirmative defense.  *State ex rel. Spencer v. E. Liverpool*

*Planning Comm.*, 80 Ohio St.3d 297, 299, 685 N.E.2d 1251 (1997).  In the context of a

motion for summary judgment, the party asserting an affirmative defense has the burden

of producing sufficient evidence in support of the defense to show the absence of a

genuine issue of material fact for trial.  *JPMorgan Chase Bank, N.A., v. Swan*, 6th Dist.

Lucas No. L-14-1186, 2015-Ohio-1056, ¶ 17, citing *Todd Dev. Co. v. Morgan*, 116 Ohio

St.3d 461, 2008-Ohio-87, 880 N.E.2d 88, ¶ 18.

{¶ 32} To support her laches defense, Elber cited Pollard's nearly 30-year delay

before asserting her claim for back child support; Pollard maintaining communication

with Othmar for years after the divorce, which showed that she knew where Othmar and

his assets were located during that period; and the prejudice caused both by Othmar not

being available to testify about payments he made and the apparently-incomplete divorce

litigation file.  The trial court agreed that Pollard's delay in filing prejudiced Elber

because Pollard "is not relying on her own records or independent recollection of events

but is exclusively relying on the records maintained by the court" to support her claims

for unpaid child support, but the court file from the divorce litigation was incomplete.

The court concluded that with the "file being incomplete it is impossible to generate an

16.

accurate arrearages figure, if in fact there are arrearages." The trial court's assessment was based largely on the contents of the divorce file, which was not properly before it.

{¶ 33} A review of the evidence demonstrates that Elber failed to show that Pollard's delay materially prejudiced Elber's case. None of the Civ.R. 56(C) evidence supports the conclusion that Elber lost helpful evidence or changed her position in a way she would not have if Pollard had raised the claims sooner. *Smith*, 168 Ohio St. 447, 156 N.E.2d 113, at paragraph three of the syllabus; *Junkins*, 6th Dist. Ottawa Nos. OT-01-006 and OT-01-007, 2002 Ohio App. LEXIS 827, at 32-33. Thus, construing the evidence properly before the trial court in a light most favorable to Pollard, we find that Elber failed to present evidence that demonstrates an absence of a genuine issue of material fact regarding the defense of laches. Therefore, we find that the trial court's decision on summary judgment cannot be upheld on this basis.

### ii. Waiver

{¶ 34} Elber also argued in her motion for summary judgment that Pollard waived her claims to unpaid child support because she maintained contact with Othmar long after their divorce, but never discussed child support with him. This argument is not supported by the Civ.R. 56(C) evidence.

{¶ 35} Waiver is the voluntary relinquishment of a known right. *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St.3d 470, 2006-Ohio-6553, 861 N.E.2d 109, ¶ 49. Generally speaking, all personal rights and privileges—whether contractual, statutory, or constitutional—are subject to waiver. *State ex rel. Athens Cty. Bd. of Commrs. v. Gallia, Jackson, Meigs, Vinton Joint Solid Waste Mgt. Dist. Bd. of Directors*, 75 Ohio St.3d 611,

17.

616, 665 N.E.2d 202 (1996). "'A party asserting waiver must prove it by establishing a clear, unequivocal, decisive act by the other party, demonstrating the intent to waive.'" *Mike McGarry & Sons, Inc. v. Constr. Resources One, LLC*, 6th Dist. Sandusky No. S-17-005, 2018-Ohio-528, ¶ 103, quoting *Maghie & Savage, Inc. v. P.J. Dick Inc.*, 10th Dist. Franklin No. 08AP-487, 2009-Ohio-2164, ¶ 27.

{¶ 36} Like laches, waiver is an affirmative defense. *Miller v. Wikel Mfg. Co.*, 46 Ohio St.3d 76, 78, 545 N.E.2d 76 (1989). So to succeed on a motion for summary judgment based on waiver, Elber was required to produce sufficient evidence in support of waiver to show an absence of genuine issues of material fact. *Swan*, 6th Dist. Lucas No. L-14-1186, 2015-Ohio-1056, at ¶ 17.

{¶ 37} Here, Elber did not submit any evidence showing "a clear, unequivocal, decisive act" by Pollard that demonstrated Pollard's intent to waive her right to collect unpaid child support from Othmar. The Civ.R. 56(C) evidence does not address whether Pollard voluntarily relinquished her right to collect unpaid child support from Othmar. Therefore, Elber did not meet her burden of showing that no genuine issues of material fact remain regarding waiver, and the trial court's decision on summary judgment cannot be upheld on this basis.

### iii.  Speculative Damages

{¶ 38} Finally, Elber argued—based on the incomplete divorce file—that summary judgment was appropriate because Pollard's damages were speculative. This argument is not supported by the Civ.R. 56(C) evidence.

18.

{¶ 39} Generally, to recover compensatory damages, a plaintiff must show her damages with certainty; damages cannot "be left to conjecture and speculation." *Pietz v. Toledo Trust Co.*, 63 Ohio App.3d 17, 22, 577 N.E.2d 1118 (6th Dist.1989). To survive Elber's motion for summary judgment, Pollard "was required to present evidence of the existence of damages—not the specific method of calculation or amount of damages." *Wallace v. Kalniz*, 6th Dist. Wood No. WD-12-048, 2013-Ohio-2944, ¶ 41.

{¶ 40} Once again, construing the evidence properly before the trial court in the light most favorable to Pollard, we find that Elber failed to show that she was entitled to summary judgment because Pollard's damages were speculative. Pollard alleged that Othmar did not pay any child support from the date of their divorce until his death, which she calculated based on records from the divorce litigation. Although Elber pointed to issues with calculating the *amount* of Pollard's damages (by claiming that the divorce file was incomplete), she did not submit any evidence showing that the *existence* of Pollard's damages is in dispute. We find, therefore, that genuine issues of material fact remain regarding damages and that the trial court's decision on summary judgment cannot be upheld on this basis.

### B. Pollard's Fourth Assignment of Error is Moot

{¶ 41} In her fourth assignment of error, Pollard argues that the trial court improperly weighed the evidence when it granted Elber's motion for summary judgment. Because we have found that the trial court relied on improper evidence and that the evidence properly before the court does not support summary judgment, we need not reach this issue. Accordingly, Pollard's fourth assignment of error is not well-taken.

19.

## C. Pollard is not Entitled to Prejudgment Interest

**{¶ 42}** In her fifth assignment of error, Pollard challenges the trial court's decision—notwithstanding its summary judgment decision dismissing Pollard's case—that Pollard would not be entitled to prejudgment interest on any unpaid child support. Pollard admits that she is not entitled to statutory prejudgment interest, but argues that she is entitled to prejudgment interest under the common law. Elber counters that Pollard is not entitled to prejudgment interest under either R.C. 1343.03 or 3113.219.[3]

**{¶ 43}** Generally speaking, R.C. 1343.03(A) allows a court to add postjudgment interest to an award for unpaid child support based on a support order—such as the one at issue here—that was entered or modified before July 1, 1992.[4] *See Dunbar v. Dunbar*, 68 Ohio St.3d 369, 627 N.E.2d 532 (1994) (finding that R.C. 1343.03 applies to certain child support arrearages). Specifically, a child support obligee is only entitled to *postjudgment* interest under R.C. 1343.03, i.e., interest that begins accruing once the amount due is reduced to a lump-sum judgment. *Dunbar* at syllabus.

**{¶ 44}** We review the trial court's award of prejudgment interest for an abuse of discretion. *Brondes Ford, Inc. v. Habitec Sec.*, 2015-Ohio-2441, 38 N.E.3d 1056 (6th

---

[3] The parties and the trial court referred to R.C. 3113.219, but that statute was renumbered in 2001. The applicable child support interest statute is now R.C. 3123.17.

[4] For child support orders that were entered or modified on or after July 1, 1992, R.C. 3123.17(A)(2) allows a court to order an obligor to pay prejudgment interest if the court finds that the obligor's failure to pay was "willful." *Dunbar* at 370.

20.

Dist.), ¶ 167.  Abuse of discretion means that the trial court's decision was unreasonable, arbitrary, or unconscionable.  *State ex rel. Askew v. Goldhart*, 75 Ohio St.3d 608, 610, 665 N.E.2d 200 (1996).

{¶ 45} Pollard cites three cases in support of her argument that she is entitled to prejudgment interest at common law.  Two of the three cases discuss prejudgment interest at common law as it relates to tort cases.  In *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 635 N.E.2d 331 (1994), a medical malpractice and wrongful death case, while analyzing whether a discovery order relating to prejudgment interest under R.C. 1343.03(C) was a final appealable order, the Supreme Court of Ohio discussed three tort cases and concluded that "prejudgment interest was known at common law."  *Id.* at 657. And in *Hogg v. Zanesville Canal & Mfg. Co.*, 5 Ohio 410 (1832), a property damage and nuisance case, the Supreme Court held that "[i]n actions for *torts* the jury may calculate interest on the damages actually sustained and add it to their verdict."  (Emphasis added.) *Id.* at syllabus; *see also Lawrence R.R. Co. v. Cobb*, 35 Ohio St. 94 (1878), paragraph four of the syllabus (property damage case; "In awarding damages for an injury resulting from a *tort*, compensation in the nature of interest may be included."  (Emphasis added.)).

{¶ 46} The third case that Pollard cites involved an award of *postjudgment* interest on a property settlement in a divorce case.  In *Hingsbergen v. Kelley*, 12th Dist. Butler Nos. CA2003-02-028 and CA2003-02-045, 2003-Ohio-5714, the appellate court, relying on the syllabus of *Koegel v. Koegel*, 69 Ohio St.2d 355, 432 N.E.2d 206 (1982)—in which the Supreme Court stated that "[w]hether to award interest upon obligations arising out of the division of marital property is within the discretion of the trial court"—found

21.

that the trial court did not abuse its discretion by refusing to apply the statutory interest rate in the version of R.C. 1343.03 in effect at the time to a property settlement and instead ordering a lower interest rate.

{¶ 47} However, an action seeking payment based on a child support order is neither a tort nor a divorce property settlement. *See Walters v. Walters*, 7th Dist. Jefferson No. 12 JE 17, 2013-Ohio-2554 (noting that a "tort creditor" and a "child support creditor" were different, although it did not affect the court's analysis); *Bowshier v. Dingledine*, 2d Dist. Clark No. 2762, 1991 Ohio App. LEXIS 2758, 8 (June 13, 1991) (an obligation to pay child support "does not arise out of tortious conduct * * *" for purposes of interest under R.C. 1343.03(A)); R.C. 3105.171 (regarding division of property in a divorce); R.C. 3109.05 (regarding child support orders). Pollard does not cite—nor could we find—any cases that extended entitlement to common-law prejudgment interest to awards for unpaid child support.

{¶ 48} Under the circumstances of this case, we find that the trial court did not abuse its discretion by determining that Pollard was not entitled to prejudgment interest. First, Pollard did not cite any case law that supports her position that prejudgment interest is available to her under the common law. Second, she did not argue that we should extend the concept of common-law prejudgment interest to an award for unpaid child support. And finally, Pollard's delay of nearly 30 years before filing suit would make granting Pollard prejudgment interest inequitable. *See Jones v. Progressive Preferred Ins. Co.*, 169 Ohio App.3d 291, 2006-Ohio-5420, 862 N.E.2d 850, ¶ 17 (9th Dist.) ("The court may take into account whether, on the facts of the case, it is equitable to grant

22.

prejudgment interest."); *Churchill v. Hamilton Mut. Ins.*, 6th Dist. Erie No. E-98-011, 1998 Ohio App. LEXIS 5661, 9 (Dec. 4, 1998) ("prejudgment interest is equitable * * *"). For these reasons, we conclude that the trial court did not abuse its discretion by denying Pollard's claim for prejudgment interest. Because the trial court did not abuse its discretion, we find that Pollard's fifth assignment of error is not well-taken.

### III.  Conclusion

{¶ 49} The record before us shows that Elber was not entitled to summary judgment because she did not submit competent Civ.R. 56(C) evidence upon which the trial court could have properly based its decision. All but one of the documents that Elber submitted fell outside the purview of Civ.R. 56(C) and were not incorporated into an affidavit under Civ.R. 56(E). Nor could the trial court rely on information from the divorce litigation because the trial court could not take judicial notice of proceedings in another case. The properly-considered evidence shows that genuine issues of material fact remain and that Elber is not entitled to judgment as a matter of law. Accordingly, we find that the trial court erred by granting summary judgment to Elber.

{¶ 50} Additionally, because Pollard did not support her argument that an award for unpaid child support is entitled to prejudgment interest under the common law, we also find that the trial court did not abuse its discretion by deciding that prejudgment interest would not apply to any award of unpaid child support.

{¶ 51} Accordingly, the August 4, 2017 judgment of the Erie County Court of Common Pleas is affirmed as to the denial of Pollard's request for prejudgment interest.

23.

The trial court's decision on summary judgment is reversed and the case is remanded for further proceedings consistent with this decision. Elber is ordered to pay the costs of this appeal pursuant to App.R. 24.

Affirmed, in part
and denied, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

_____
JUDGE

James D. Jensen, J.

_____
Christine E. Mayle, P.J.                                  JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.